## Thornton, et al. v. Head, et al.

(Decided October 11, 1910.)

### Appeal from Marion Circuit Court.

This action was instituted to recover school taxes by the collector of district No. 37 in Marion county, against W. A. & T. H. Thornton. Evidence considered, and held that the land sought to be subjected to the tax, did not lie within district No. 37, and was not subject to the tax.

H. W. RIVES for appellants.

WILLIAM SPALDING, H. S. McELROY, and SAMUEL AVERITT for appellees.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

This action was instituted and an order of delivery obtained by appellants, W. A. & T. H. Thornton, to recover of appellees one hundred head of sheep, which had been levied upon to satisfy taxes assessed against appellants by the trustees of graded common school district No. 37 in Marion county. It is alleged in the petition that the levy was made by appellee O. G. Head as collector of the school tax for that district; that the levy was illegal as they did not owe the taxes assessed against them as the property sought to be taxed was not within the district, and they non-residents thereof. The defendants, appellees here, consisted of the school trustees of the graded common school district and Head, its collector. In their answer they controverted the allegations of the petition and alleged that the taxes were legally assessed, were due and unpaid. By consent, the case was tried by the judge of the circuit court without the intervention of a jury.

Counsel for the parties file very lengthy and interesting briefs; but we deem it unnecessary to consider many of the questions they discuss. The only question necessary for a determination of the case is: Did the lower court err in finding that the property assessed for taxation was legally assessed in the graded school district? In the case of Willis v. Thornton, 25 Ky. Law Rep., 1521, this court construed the boundary of the same graded school district. In that case the trustees attempted to make Eliza Thornton pay tax to that district on her real estate. The court determined that her property was not within the district, but in discussing the matter said that the farm of W. A. Thornton was included in the boundary. This statement, however, is not binding upon him because he does not appear to have been a party to that action, but it indicates how this court felt about it at that time. Graded school district No. 37 was created by a vote of the people in accordance with the requirements of the statute. The boundary as given in the order of the court establishing the district, and about which there is no controversy, is as follows:

"Beginning at Sam Spalding's, excluded, thence across the knob to the Tucker farm, excluded, thence up the Rolling Fork and South Fork to the mouth of Old Lick Creek, thence to Frank Dean's, thence to the Toll-House on the Lebanon and Hustonville pike, included,

thence through the Narrows including all in the Narrows, thence to B. N. Isaac's farm, excluded, thence down the Rolling Fork to the beginning. This boundary changed by consent of trustees to include the farm now occupied by Wm. Thornton. No point of the aforesaid boundary being not more than two and one-half miles from the site of the school building hereinafter named.''

This boundary, as given, expressly included the farm of appellant W. A. Thornton upon which he lived, and the testimony shows that after the boundary was so changed, he sent his children to school in that district; that he was one of the trustees for two years and treasurer for one year; that he paid a poll and tax upon his personal property in that district from the time it was established until two years before this action was commenced, but did not pay upon his real estate. When he failed to pay his taxes for the two years mentioned, the trustees instituted an investigation of the matter and concluded that he should not only pay on his personalty but on real estate also in that district, and proceeded to assess his real estate for the next preceding five years, which, with the tax on his personal property, amounted to something over $130. They assessed his land at 410 acres, and the lower court reduced it to about 200 acres. This difference between the action of the trustees and the court was brought about as follows: T. H. Thornton, the father of W. A. Thornton, had a legal title to something near 1,000 acres of land, which he had purchased from different persons and at different times, but all formed one body. Appellants listed it to the assessor in two tracts, one of 410 acres and the other the balance. The trustees ascertaining that W. A. Thornton lived upon the 410 acre tract and, as they thought, his father lived upon the other tract, they assessed W. A. Thornton's home farm as containing 410 acres, but the court, after hearing the evidence, determined that his home contained but 200 acres.

Appellants contend that the court erred in permitting the assessment to stand against any part of this real estate because it was not intended to be included in the graded school district boundary, and that it is not included therein; that the school district is north of the South Fork as called for in the district boundary; that their land is south of South Fork and does not touch it anywhere; that one John Taylor who resides in the graded school

district lives on the north of South Fork and his land is located on both sides of South Fork, a small portion of it, about 20 acres, being on the south side and is a long narrow strip along the bank thereof and between the land sought to be taxed and South Fork. Appellants also contend that their farm could not be legally included in the district because this Taylor strip of land lies between their land and South Fork, the south line of the graded school district. Appellants contend that all parts of the district must be contiguous. We find that the only limitation fixed by the statute of Kentucky upon graded school districts is, "no part of a district shall be more than two and one-half miles from the school house." (Ky. Stats., Sec. 4464.) But this question is not decided. Conceding, for the purpose of this case, that appellants' contention is right, we are of the opinion that their land is contiguous to the district. While it is true, the strip belonging to Taylor lies between the South Fork and their land, we find that it is also a part of the district; that it has been recognized as a part of it for many years by the owner who has paid taxes on it in that district, and in addition, the language of the order in changing the boundary of the district by including the farm of W. A. Thornton, necessarily included the land of Taylor as well. Appellants further contend that in no event should more than 100 acres of the real estate be taxed as composing the farm of W. A. Thornton. The facts upon which they base this contention are these: One B. F. Purdy owned the 200 acres taxed by the court, and sold one-half of it to T. H. Thornton about thirty years ago and sold the other half to one Rawlings. In the year 1881 Rawlings sold his part of it to T. H. Thornton, father of W. A. Thornton, since which time it has been owned by appellants and used as one body of land. Appellant W. A. Thornton erected a house upon the 100 acres which Purdy sold his father and had been occupying the land for more than twenty years. The 100 acres owned by Rawlings is between South Fork and the part upon which W. A. Thornton built his dwelling and has since resided. The substance of appellants' contention is that as this land came to Thornton by two purchases, and as W. A. Thornton resided upon the first purchased, that place only should be included in the graded school district under the order of the court heretofore referred to. We cannot agree to this. W. A. Thornton resided upon and used this 200 acres as one

body of land, and this condition existed at the time the order of the court establishing the district was made. His father conveyed him the 200 acres by deed in 1909, and it is a reasonable inference from the facts appearing in the record that W. A. Thornton occupied this land under a verbal understanding that his father would make the conveyance referred to, but without such an understanding, it is reasonable to presume that T. H. Thornton would not have made the deed as he did.

Finding no error in the judgment of the lower court, it is affirmed.